[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10221

_____

D.C. Docket No. 8:13-cr-00237-SDM-TBM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN DONALDSON, SR.,
DUANE CRITHFIELD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 22, 2019)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and MOORE,[*]
District Judge.

MOORE, District Judge:

---

[*] Honorable K. Michael Moore, United States District Chief Judge for the Southern District of
Florida, sitting by designation.

Appellants Duane Crithfield and Stephen Donaldson, Sr. appeal multiple orders relating to their convictions for conspiring to defraud the United States, 18 U.S.C. § 371, and willfully aiding the submission of false and fraudulent income tax returns, 26 U.S.C § 7206(2).  Following an 11–day bench trial, the district court found Appellants guilty on all counts.  Appellants then moved for a new trial, which the district court also denied.  Appellants raise three issues in this consolidated appeal: whether (1) the government's evidence was sufficient to sustain their convictions; (2) the district court abused its discretion in denying Appellants' motion for a new trial; and (3) the district court improperly declined to suppress certain documents obtained by the government because of an allegedly false search warrant affidavit.  After careful review, we affirm.

## I. BACKGROUND

### A.  The Business Protection Plan.

In the 1990s, Appellants established a network of companies and trusts, largely incorporated offshore, to promote and sell to closely held businesses the Business Protection Plan ("BPP"), a purportedly lawful, insurance–based tax shelter.  Donaldson promoted and sold the BPP and Crithfield was a director and officer of several of the offshore entities within the commercial enterprise.  The BPP effectively operated as follows: a closely held business paid a lump–sum premium in exchange for an insurance policy issued by either Fidelity Insurance

2

Company ("Fidelity") or Citadel Insurance Company ("Citadel"), two entities within Appellants' commercial enterprise.  That business then deducted that premium from its taxable income as an "ordinary and necessary" business expense.  After collecting the premium, Appellants' enterprise charged the business either 15% or 17% of the premium, a rate ostensibly lower than the business's nominal marginal tax rate, and then allocated the remaining 83% or 85% to a segregated trust or limited liability company ("LLC") set up solely for that business.  The business then assumed control of that trust or LLC, which contained the remaining portion of its premium, without paying any tax or interest on that premium.

*B. The Legal Opinions.*

Appellants repeatedly assured their clients that the BPP was legitimate and compliant with Internal Revenue Service ("IRS") requirements.  In 2001, Fidelity obtained a legal opinion from Lord, Bissel and Brook ("Lord Bissel"), which attested to the legality of the BPP's structure.  Based upon certain factual representations made by Fidelity, Lord Bissel concluded that the insurance policies offered to BPP clients involved legitimate risk shifting and risk distribution. Specifically, Fidelity certified to Lord Bissel as a fact that BPP clients purchasing a BPP policy transferred to Fidelity the risk–of–loss covered by the policy (*i.e.¸* that Fidelity bore the risk of reimbursing any claims on the policy).  Based upon the factual assumptions certified by Fidelity, Lord Bissel issued an opinion stating that

3

it was "more likely than not" that a business purchasing a BPP risk policy would be entitled to a federal income–tax deduction under 26 U.S.C. § 162 for the amount of the premium paid.

In 2003, after Fidelity asked Lord Bissel to issue an updated opinion on the BPP's structure, Lord Bissel attorneys raised concerns with Appellants about whether the BPP in fact involved legitimate risk shifting and distribution and therefore qualified as deductible for tax purposes. After multiple rounds of discussions among Appellants, Fidelity's in–house counsel, and attorneys from Lord Bissel, Lord Bissel determined that, contrary to the facts certified by Fidelity, none of the entities in Appellants' commercial enterprise retained any risk of loss on the BPP's business–risk policies. Attorneys at Lord Bissel reasoned that because nearly all losses under any BPP business–risk policy were to be funded by the LLC created for the BPP client, rather than Fidelity or the entity issuing the policy, the BPP incentivized clients to not file any claims. After these discussions, Lord Bissel decided that its prior opinion was "not appropriate in light of what [Lord Bissel] had found," and withdrew its 2001 opinion and its representation of Fidelity. Lord Bissel then wrote several letters to Fidelity, Crithfield, and BPP customers, stating that Fidelity's factual representations concerning the BPP had been inaccurate and that its 2001 opinion should not be relied upon. Appellants,

4

meanwhile, continued to promote the BPP without informing potential clients about the Lord Bissel withdrawal.

In December 2003, Appellants secured another legal opinion from tax attorney James Duggan of the law firm Handler, Thayer and Duggan ("Handler Thayer"), which similarly stated that the premiums paid for a business–risk policy under the BPP were "more likely than not" deductible under § 162. However, the Handler Thayer opinion rested on a set of assumptions substantially similar to those that supported the initial Lord Bissel opinion. Specifically, Handler Thayer assumed, *inter alia*, that (1) the premiums charged by Fidelity were calculated using actuarial principles that were competitive with the premiums charged by other insurers for similar policies, and that (2) the "primary emphasis" in the promotion of the BPP to BPP clients was the risk protection offered by its insurance products and that "any discussion of potential tax benefits [was] incidental."

In December 2006 and March 2007, more than three years after being informed by Lord Bissel attorneys that BPP policies were not deductible under 26 U.S.C. § 162, Appellants collected BPP premiums from two clients, Brian James, M.D., P.A. and Safety Productions, Inc., who proceeded to deduct their premiums from their respective tax liabilities. Donaldson was the "primary consultant" and "key person involved" in selling the plan to both clients.

5

## C.  Searches.

On May 9, 2007, federal agents executed search warrants at several properties affiliated with the commercial enterprise and its officers.  In an affidavit supporting the warrant, IRS Criminal Investigations Special Agent Carl Coffman ("Affiant") detailed the BPP structure and stated that, among other things: (1) the BPP's true purpose was to "shelter the income" of BPP clients by "lower[ing] the profits in [the] business," (2) there was no concern for whether the insurance coverage was necessary for the clients, and (3) the clients provided self–reinsurance with the funds in their offshore trusts.  Affiant ultimately concluded that there was probable cause to believe that the BPP was an "illegal tax scheme," the primary purpose of which was tax evasion.

## D.  Superseding Indictment.

On July 25, 2013, a grand jury charged Appellants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and willfully aiding the submission of false and fraudulent income tax returns for two BPP clients: Brian James, M.D., P.A. and Safety Productions, Inc., in violation of 26 U.S.C § 7206(2).

## E.  Motion to Suppress.

Appellants moved to suppress the documents obtained during the Government's searches, arguing, among other things, that the Affiant misled the issuing magistrate by stating that the Lord Bissel and Handler Thayer opinions

6

themselves created a "illegal tax scheme." The district court denied Appellants' motion to suppress.

## F. Bench Trial and Judgment.

On June 6, 2016, the parties began an 11–day bench trial. In anticipation of testimony by Handler Thayer attorney James Duggan, the district court observed that it was "not sure what [] value" Duggan's testimony would provide that was not already stated in the Handler Thayer opinion, and that Duggan's testimony would have to "improve[] on" the reasoning and conclusions within the opinion. Donaldson's counsel decided not to call Duggan as a witness, stating that "in light of [Donaldson's] own evidentiary determinations and decisions as to how the case should proceed," Duggan would not be called as a witness on Donaldson's behalf.

On July 12, 2017, the district court issued an order finding Appellants guilty of conspiring to defraud the United States and willfully aiding the submission of false and fraudulent income tax returns. Therein, the court explicitly rejected Appellants' defense of reliance on the advice of counsel. The district court stated that the issuance and withdrawal of Lord Bissel's opinion letter, coupled with the solicitation and issuance of the Handler Thayer opinion, "show that the defendants knew exactly the lies they needed to tell the lawyers (or knew, at least, what the lawyers needed to hear) in order to achieve a favorable legal opinion (necessary to successful marketing of the BPP); that the defendants told the lawyers the

7

necessary lies and achieved the desired opinion." The court found that despite Lord Bissel's repeated warnings of the fraudulent nature of the BPP, Appellants continued to market and operate the BPP as it had prior to Lord Bissel's withdrawal. The court concluded that "[i]f and to the extent that either defendant has raised the defense of 'advice of counsel,' the evidence defeats the defense by showing that [the Lord Bissel and Handler Thayer opinions]–even if correct based on the stated facts–include assumptions of fact that vary dramatically and decisively from pertinent history, as Crithfield and Donaldson well knew and as they agreed and planned."

Following the district court's order and judgment, Appellants moved for a new trial, arguing, *inter alia*, that the district court impermissibly "persuaded" Donaldson to not call Duggan as a witness in his defense. The district court denied Appellants' motion for a new trial in a summary order. The district court sentenced Donaldson to 76 months' imprisonment and Crithfield to 54 months' imprisonment, both followed by three years of supervised release, and a joint and several restitution liability of $4,086,656.10.

## II. STANDARDS OF REVIEW

First, this Court reviews *de novo* whether the Government presented sufficient evidence to support a guilty verdict in a criminal trial. *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) (internal citation omitted). In

8

conducting its review, the Court "views the evidence in the light most favorable to the Government and resolves all reasonable inferences and credibility evaluations in favor of the verdict." *Id.* "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* (internal citation omitted).

Second, this Court will overturn the denial of a motion for a new trial only if the evidence preponderates heavily against the verdict, so that it would be a miscarriage of justice to let the verdict stand. *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015) (internal citation and quotation marks omitted).

Third, in reviewing the denial of a motion to suppress evidence, this Court considers the entire record, including trial testimony, and views the facts in the light most favorable to the prevailing party. *See United States v. Capers*, 708 F.3d 1286, 1295–96 (11th Cir. 2013). This Court reviews the district court's factual findings for clear error and the district court's application of the law to those facts *de novo*. *Id.* at 1295 (internal citation and quotation marks omitted).

### III. DISCUSSION

*A. Sufficiency of the Evidence.*

Appellants challenge the sufficiency of the evidence supporting their convictions for willfully conspiring to defraud the IRS, 18 U.S.C. § 371, and willfully aiding the submission of false and fraudulent income tax returns for Brian

9

James, M.D., P.A. and Safety Productions, Inc., 26 U.S.C § 7206(2). Appellants argue that the district court erred in finding that the BPP was a sham agreement and that Appellants' reliance on the advice of counsel negated any finding of willfulness to violate § 371 or § 7206(2). In response, the Government argues that the evidence introduced at trial "amply support[ed]" the district court's finding that the BPP was a sham, that Appellants knew it was a sham, and that it was willfully used to defraud the IRS and assist in the filing of false tax returns.

This Court views the evidence supporting Appellants' convictions "in the light most favorable to the Government and resolves all reasonable inferences and credibility evaluations in favor of the verdict." *Isnadin*, 742 F.3d at 1303. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* (internal citation omitted).

### 1. The BPP Operated As a Substantive Sham.

Crithfield argues that the district court erred in finding that the BPP was a "sham" transaction solely motivated by tax evasion because the BPP "received the blessings" of prominent tax lawyers. The Government contends that the district court was presented with sufficient evidence to find that the BPP wholly lacked economic substance or a substantial business purpose and was therefore properly found to be a sham.

10

A transaction does not qualify for an IRS deduction when it either lacks (1) a substantial business purpose besides the generation of a tax benefit or (2) economic substance independent of a taxpayer's federal income–tax considerations.  *See United Parcel Serv. of Am., Inc. v. Comm'r of Internal Revenue*, 254 F.3d 1014, 1018 (11th Cir. 2001).  Even if a legitimate business purpose motivates a business owner, a transaction lacking an economic effect and functioning only to produce a tax deduction is a substantive sham.  *See Kirchman v. C.I.R.*, 862 F.2d 1486, 1490–92 (11th Cir. 1989); *Stobie Creek Invs., LLC v. United States*, 608 F.3d 1366, 1376 (Fed. Cir. 2010) ("A transaction lacks 'economic reality' when the tax result . . . is 'purely fictional.'") (internal citation omitted).

The evidence supports the district court's finding that the BPP had no economic substance independent of a taxpayer's federal income–tax considerations, and was thus a substantive sham.  *United Parcel Serv.*, 254 F.3d at 1018.  Specifically, the district court did not err in concluding that the purchase of BPP policies did not shift any risk to Appellants' commercial enterprise and was therefore non–deductible.  *Steere Tank Lines, Inc. v. United States*, 577 F.2d 279, 280 (5th Cir. 1978) (holding that a "true insurance contract" requires the shifting or distribution of risk); *Beech Aircraft Corp. v. United States*, 797 F.2d 920, 922 (10th Cir. 1986) (holding that risk shifting occurs only if a party transfers a risk of

11

loss to another party, and if the insured retains the risk of his own loss, the arrangement is self–insurance, which "is not the equivalent of insurance").

The district court properly credited the testimony of multiple expert witnesses who testified that none of the entities within the commercial enterprise incurred any risk of loss under any BPP insurance policy, and that the structure of the BPP therefore ensured that none of the enterprise entities ever reimbursed a BPP client for a claim submitted pursuant to a BPP policy.[1]  The district court also properly credited the testimony of former Lord Bissel attorney Thomas Walsh, whose 2003 letter to Appellants and BPP clients stated, *inter alia*, that the structure of the commercial enterprise never resulted in Fidelity retaining any risk of loss on any BPP policy, and that the risk of loss was actually assumed by the policy holder itself.  The district court therefore had sufficient evidence to conclude that the BPP lacked economic effect worthy of "respect in taxation," and was thus a substantive sham.  *See Kirchman*, 862 F.2d at 1490; *United Parcel Serv.*, 254 F.3d at 1018.

Concluding that the BPP was a substantive sham, the district court proceeded to evaluate whether Appellants (1) knowingly conspired to defraud the United States by encouraging their clients to purchase the sham BPP policies and therefore defeat the federal income tax and (2) willfully aided in their clients'

---

[1]  These experts ultimately opined that a BPP policy did not, in effect, qualify as insurance at all, and therefore was not deductible under 26 U.S.C. § 162.

12

submission of false and fraudulent income tax returns.  We address the district court's analysis in turn.

2.  Appellants Conspired to Defraud the United States.

Appellants argue that the district court had insufficient evidence to conclude that they willfully conspired to defraud the IRS.  In response, the Government argues that Appellants acted willfully because they knew that the BPP was a sham, yet nonetheless acted in concert to effect the submission of false tax documents. The Government adds that Appellants knew that the Lord Bissel and Handler Thayer opinions were issued based upon material misrepresentations, and thus could not rely on them in good faith.

To convict a defendant for conspiracy to defraud the IRS under 18 U.S.C. § 371, a so–called *Klein* conspiracy, *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), the Government must prove beyond a reasonable doubt the defendant's (1) agreement with another to impede the functions of the IRS, (2) knowing and voluntary participation in the agreement, and (3) commission of an act in furtherance of the agreement.  *United States v. Hough*, 803 F.3d 1181, 1187 (11th Cir. 2015); *United States v. Kottwitz*, 614 F.3d 1241, 1264 (11th Cir.), *vacated in part on other grounds*, 627 F.3d 1383 (11th Cir. 2010).

One becomes a member of a conspiracy if he or she understands the essential nature of the plan and willfully joins that plan.  *United States v. Andrews*,

13

953 F.2d 1312, 1318 (11th Cir. 1992). Circumstantial evidence can help prove a person's knowledge of, and participation in, a conspiracy. *See Hough*, 803 F.3d at 1187 (stating that conspiracy can be proven through "concerted actions, overt acts, relationship, and the entirety of their conduct"). The Government is not required to prove that each conspirator knew every detail or participated in every aspect of the conspiracy, only that he or she knew of the conspiracy's "essential nature." *United States v. Browning*, 723 F.2d 1544, 1546 (11th Cir. 1984).

The record firmly supports the district court's finding that Appellants "conceived, designed, constructed, marketed, and otherwise fully implemented and executed the BPP," a substantive sham designed primarily, if not exclusively, to defeat the federal income tax. As stated by the district court, Appellants were "necessarily and unavoidably aware of the nature and purpose of the BPP scheme and acted together and with others to further this plan."

First, by creating, implementing, and executing the BPP, Appellants unquestionably agreed to cause, and took numerous overt steps towards causing, the underreporting of large amounts of their clients' income. *See United States v. Schafer*, 580 F.2d 774, 782 (5th Cir. 1978) (holding that evidence of a "consistent pattern of under–reporting large amounts of income" supported a finding of willful intent to violate tax law).

14

Second, Appellants do not dispute that they closely worked together–Donaldson as salesman and promoter and Crithfield as officer and director–to create, market, promote, sell, and administer the BPP.

Third, Appellants' continued operation of the BPP following Lord Bissel's categorical withdrawal of its 2001 opinion and representation of Fidelity supported the district court's finding that Appellants acted willfully and in furtherance of their agreement to sell sham insurance. *See Hough*, 803 F.3d at 1187.[2]

Appellants' advice-of-counsel defense fails. To establish an advice of counsel defense, Appellants bear the burden of proving that they (1) fully disclosed to their attorney all material facts relevant to the advice for which the attorney was retained to provide and (2) relied in good faith on the advice given. *See United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013) (internal citation and quotation marks omitted). Here, Lord Bissel and Handler Thayer were not provided with all material facts relevant to their advice. Fidelity certified facts to Lord Bissel and Handler Thayer that were demonstrably false, including that BPP

---

[2] Donaldson states that there is no record evidence of him speaking to anyone at Handler Thayer prior to the issuance of the Handler Thayer opinion, and that the district court therefore erred in stating that he "lied" to "the lawyers" to secure a favorable opinion. However, the district court never stated that Donaldson lied specifically to Handler Thayer. The district court merely found that Donaldson lied to "lawyers," a contention amply supported by the record. Moreover, the Government did not need to prove that Donaldson knew of or participated in every aspect of the conspiracy, but only that he knew of the conspiracy's "essential nature." *See Browning*, 723 F.2d at 1546. The overwhelming evidence presented at trial supported a conclusion that Donaldson was well aware of the essential nature of Appellants' conspiracy to defraud the IRS. *See id.*

15

policies involved genuine risk shifting and distribution and that the premiums charged by Fidelity were calculated using arms–length actuarial principles.

Donaldson argues that his role as "mere salesman" in the commercial enterprise also negates his willful intent. In *United States v. Parker*, 839 F.2d 1473, 1478 (11th Cir. 1988), this Court reversed the conviction of salesmen who had no reason to suspect that the securities they traded lacked sufficient collateral. This Court reasoned that because there was no evidence that the salesmen were aware of, or participated in, a fraud perpetrated solely by their employer, their convictions should be vacated. *Id.* at 1479. Unlike the salesmen in *Parker*, Donaldson had ample reason to suspect that he was marketing and selling an illegal product. That reason came directly from Fidelity's lawyers at Lord Bissel, who withdrew their 2001 opinion sanctioning the BPP because several "material facts" represented to Lord Bissel by Appellants "may not have been true." Donaldson was thus fully aware of Lord Bissel's concerns with the BPP's legality. Nonetheless, even after Lord Bissel's withdrawal, Donaldson continued to promote the BPP as fully compliant with the tax law. *Parker* is therefore inapposite to the instant case because Donaldson was aware of the BPP's potential illegality before proceeding to market and sell it.

The evidence presented at trial was thus sufficient to support a finding that Appellants (1) agreed to impede the functions of the IRS, (2) voluntarily,

16

knowingly, and willfully participated in their agreement, and (3) acted repeatedly in furtherance of their agreement.[3]  *See Hough*, 803 F.3d at 1187.

### 3.  Appellants Willfully Aided in the Filing of False Tax Returns.

Appellants argue that their convictions for substantive tax fraud under § 7206(2) should be overturned because they relied on advice from counsel that sanctioned the structure of the BPP as IRS–compliant.  In response, the Government argues that Appellants acted willfully and "did not establish good–faith reliance on the [Lord Bissel] or [Handler Thayer] opinions."

To prove a violation of § 7206(2), the Government must prove beyond a reasonable doubt that the defendant (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a tax return (3) containing material statements that the defendant knew to be false.  *See Kottwitz*, 614 F.3d at 1269 (internal quotation marks and citation omitted).  A defendant willfully violates § 7206(2) when he or she creates, organizes, and operates a fraudulent tax shelter that results in the preparation or presentation of a materially false tax return.  *See United States v. Kelley*, 864 F.2d 569, 576–77 (7th Cir. 1989).

---

[3]  Crithfield argues that his role in the creation, implementation, and administration of the BPP was insufficient for the district court to conclude that he acted willfully to defraud the IRS. However, the record reflects that Crithfield knew of the enterprise's operations, remained in regular contact with Donaldson, and had direct awareness of Lord Bissel's issues with the BPP's operations and Lord Bissel's subsequent withdrawal.  The district court was therefore presented with sufficient evidence to conclude that Crithfield willfully conspired with Donaldson to create, operate, and promote the BPP, fully knowing that the BPP was a substantive sham.

17

Here, the district court properly concluded that two BPP clients–Brian James, M.D., P.A. and Safety Products, Inc.–paid Citadel hefty premiums in exchange for sham BPP business–risk policies that were created, promoted, and administered by Appellants.  After Donaldson assured these clients that the BPP was a mere "asset protection investment mechanism" that would "fly with the IRS," the clients impermissibly deducted those premiums from their corporate tax returns.  Trial testimony showed that Donaldson was the "primary consultant" and "key person involved" in getting both clients to purchase BPP policies.  Although Appellants argue that they were merely relying on the expertise of the attorneys at Lord Bissel and Handler Thayer in administering the BPP, Appellants' advice–of–counsel argument fails for the reasons stated in Section III.A.2, *supra*.

The district court therefore had sufficient evidence to conclude that by creating, marketing, and administering the BPP, a fraudulent tax shelter that resulted in the preparation of materially false tax returns by Brian James, M.D., P.A. and Safety Products, Inc., Appellants willfully violated § 7206(2).  *See Kelley*, 864 F.2d at 576–77; *Kottwitz*, 614 F.3d at 1269.

### B.  Denial of Motion for Acquittal or New Trial.

Donaldson argues that the district court abused its discretion in denying his motion for a new trial because the district court impermissibly "persuaded" Donaldson to not call Handler Thayer attorney James Duggan as a witness in his

18

defense.  Donaldson claims that if Duggan testified, he would have stated that, contrary to the district court's findings, Donaldson did not lie to Duggan to secure a favorable opinion from Handler Thayer and that the insurance plans offered by the BPP were not "fantastical and superfluous."  The Government argues that the district court did not discourage Donaldson from calling Duggan as a witness, and that, even if it did, any error on the district court's part was harmless.

The district court may exercise its discretion to vacate a judgment and grant a new trial if the interest of justice so requires.  Fed R. Crim. P. 33.  This Court will overturn the denial of a motion for a new trial only if the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand.  *Albury*, 782 F.3d at 1295.

First, the district court did not discourage Donaldson from calling Duggan as a witness.  The district court stated, after admitting into evidence the text of the Handler Thayer opinion, that it was not sure what additional value Duggan's testimony would provide, and that any such testimony would have to include relevant information not already mentioned in the Handler Thayer opinion.  Then, Donaldson's counsel decided not to call Duggan as a witness.  Contrary to Donaldson's assertion, the district court never "informed" Donaldson that Duggan's testimony was "unnecessary."  Nor did the district court even offer Donaldson "guidance" regarding his own decision of whether to call a witness.

19

The district court merely questioned the potential efficacy of Duggan as a witness, and Donaldson's counsel made a voluntary decision against calling Duggan as a witness "in light of [his] own evidentiary determinations and decisions as to how the case should proceed."

Moreover, the district court did not find, as Donaldson suggests, that the coverages offered within the BPP were superfluous for all purposes. Rather, the district court found that the coverages were superfluous for the specific customers who bought them, including one doctor's office that purchased wholly unnecessary insurance for protection against international kidnapping.

Because Donaldson fails to show a "miscarriage of justice" caused by his attorneys' decision to not call Duggan as a witness, this Court affirms the district court's denial of Donaldson's motion for a new trial. *See Albury*, 782 F.3d at 1295.

### C. *Denial of Motion to Suppress.*

Finally, Appellants challenge the district court's denial of their motion to suppress all evidence seized by federal agents on May 9, 2007 pursuant to several search warrants. Appellants argue that the warrants were issued in reliance on a 32–page affidavit that intentionally and falsely stated that the Lord Bissel and Handler Thayer opinions themselves created an "illegal tax scheme," when the

20

Government did not challenge the lawfulness of the opinions themselves.[4]  In response, the Government argues that the affidavit was "truthful and entirely consistent with the [the Government's] proof at trial."

To attack the veracity of an affidavit supporting a search warrant, the burden falls on the defendant to show that the affiant "knowingly and intentionally, or with reckless disregard for the truth," misstated facts that were essential to the finding of probable cause.  *See Franks v. Delaware*, 438 U.S. 154, 155–156 (1978).  However, "intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause."  *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) (internal citation omitted).  If probable cause still exists once any misrepresentations are taken out of the warrant and any omissions are inserted, "there is no . . . *Franks* violation."  *See Capers*, 708 F.3d at 1296.

Here, probable cause supported the searches at issue regardless of whether the Affiant falsely stated that the legal opinions at issue created an "illegal tax scheme."  *Lebowitz*, 676 F.3d at 1010.  The detailed 32–page affidavit in support of the warrant provided sufficient evidence for the issuing magistrate to conclude that Appellants may have devised the BPP scheme precisely to effect the

---

[4]  Appellants invite the Court to address other suppression arguments briefed before the district court, but not on appeal.  This Court declines to do so.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that issues not briefed on appeal are considered abandoned).

21

submission of materially false tax returns.  *See Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily or even usefully reduced to a neat set of legal rules.").  Specifically, the Affiant presented evidence that the BPP was promoted primarily as a vehicle for asset protection and tax avoidance; that Lord Bissel questioned its legality and that Appellants continued their operations anyway; that BPP clients were encouraged to buy insurance against risks unlikely to occur; that BPP clients were encouraged to not submit claims against their BPP policies; and that the premium amount was calculated not by accounting professionals using actuarially sound principles, but by the clients themselves.

Thus, even if the Affiant had not asserted that the Lord Bissel and Handler Thayer opinions themselves created an "illegal tax scheme," the affidavit nonetheless presented sufficient facts to support a finding of probable cause.  *See Capers*, 708 F.3d at 1296.  The district court's order denying Appellants' motion to suppress is therefore affirmed.

## IV. CONCLUSION

We **AFFIRM** the judgment of the district court.

22