[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15183

_____

D.C. Docket No. 8:11-cr-00410-SDM-TBM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL RENARD ALBURY, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 9, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and HINKLE,* District
Judge.

MARCUS, Circuit Judge:

---

* Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida,
sitting by designation.

After a jury trial, Michael Albury, Jr. appeals from his convictions for various narcotics offenses, including possession with intent to distribute cocaine, cocaine base, and N-Benzylpiperazine ("BZP" -- a schedule I controlled substance), along with various firearm offenses. Albury raises three claims on appeal: that law enforcement officers unlawfully gathered and used evidence seized in violation of the Fourth Amendment when applying for a search warrant, rendering the warrant invalid; that the district court erred in denying his motion for judgment of acquittal because insufficient evidence supported his convictions and the jury rendered inconsistent verdicts; and, finally, that the district court erred in denying his motion for a new trial based on insufficient evidence, inconsistent verdicts, and an improper flight instruction. After thorough review, we affirm.

**I.**

The essential facts are these. Albury checked into a hotel in Bradenton, Florida, on July 20, 2011. He arranged to stay at the hotel until July 31, making all payments with his own credit card and in cash. On July 26, the plumbing in Albury's room, room 342, began to leak. Albury was forced to transfer just down the hall to room 332, so that hotel employees could immediately fix the leak.

After Albury vacated room 342, Jackie Blackwell, the hotel maintenance supervisor, entered the room to make repairs. While picking up food and trash left behind by Albury, Blackwell stumbled on a loaded Glock pistol, which he placed

2

in a safe at the hotel's front desk.  Blackwell returned to the room, wiped up a "white powdery substance" that was on the table, picked up some empty baggies and food debris, and brought that trash to the dumpster.  On his way back to room 342, Blackwell spotted Albury going into room 332.  Blackwell told Albury the Glock was in the safe at the front desk.  Albury said the gun was his girlfriend's, but he immediately went to the front desk to reclaim it.  When Blackwell returned to room 342, he discovered more baggies with white residue, rubber bands, and a small line of white powder on the credenza -- none of which were removed from the room.  Blackwell reported his findings to the hotel manager, who decided to alert the police.

Officer Waker, from the Bradenton Police Department, and another officer initially responded to the call.  When Blackwell escorted the officers to room 342, he pointed out Albury's new room (room 332), the door to which was closed and latched at that time.  The officers entered room 342 and observed the white powder residue and baggies still on the credenza.  They then asked to go to room 332.  When they reached room 332, the dead bolt had been thrown so that the self-closing door was resting against the jamb without latching, but obstructing any view into the room.  Officer Waker knocked and announced his presence, causing the door to swing open.  He entered the room and observed a mound of white powder approximately six inches long and three inches high.  When Officer Waker

3

exited, he instructed the other officer to secure the room.  Additional officers arrived at the hotel and discovered two cookies of crack in the nightstand in room 342.  At the request of the police, Blackwell retrieved the garbage he previously removed from room 342.  When Blackwell returned with the garbage bag, he saw police "traffic going in and out of" room 332.

A short time later, Detective Johnson arrived at the hotel.  He was escorted to room 342, where he field tested the powder residue, the baggies, and the cookies of crack that were found there.  All tested positive for cocaine.  When he walked to room 332, he claimed the door was open, allowing him to see in plain view the mound of white powder inside the room.

Detective Johnson submitted an affidavit in support of a search warrant for room 332, detailing the following information:  the evidence that the police found in room 342, including the cocaine residue, crack cookies, and baggies with cocaine residue; the Glock firearm that Blackwell discovered and that Albury personally retrieved;  Albury's prior cocaine trafficking conviction, which made it unlawful for him to possess a firearm; that room 342 had been registered exclusively to Albury since July 20, and that he was relocated to room 332 that day because of a leak in room 342; that hotel employees identified Albury as the individual who paid for both rooms; and that Albury recently paid to extend his stay in room 332.

4

Detective Johnson also included several problematic statements in his affidavit.  He said that when Officer Waker initially approached room 332, the door "was wide open."  Detective Johnson also said that when he reached room 332, the "door was still open from the last occupants that left it," allowing him to "see in plain view from the hallway, a white substance" which he believed to be cocaine powder.  Finally, he failed to state that Blackwell previously removed some of the plastic baggies with cocaine residue from room 342, only to retrieve them from the dumpster at the request of the police.

A search warrant for room 332 was issued based on Detective Johnson's affidavit.  The search of that room revealed in excess of 600 grams of cocaine substance; plastic baggies and rubber bands; a scale with cocaine residue; a purse containing hundreds of N-Benzylpiperazine pills and a loaded Phoenix Arms .25 pistol; nearly $15,000 in cash; a prescription pill bottle bearing Albury's name; Albury's identification; his credit card; and various men's and women's clothing and personal effects.

Soon thereafter Albury was indicted in the United States District Court for the Middle District of Florida for one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count One); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count Two); one count of

possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), 851, and 18 U.S.C. § 2 (Count Five); one count of possession with intent to distribute N-Benzylpiperazine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count Six); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Counts Three and Seven); and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and 2 (Counts Four and Eight).

Prior to trial, Albury moved to suppress the evidence discovered in room 332. He argued that the police unlawfully entered room 332, and used their observation of cocaine inside that room as the basis for obtaining a warrant. The government responded that the warrant was valid because, even without the observations made from inside room 332, Detective Johnson's affidavit still established probable cause that contraband would be found there. At a hearing on Albury's motion, Detective Johnson was asked if he would "have applied for the warrant had [he] not seen the cocaine in 332." He answered, "[n]o." The government tried to explore Detective Johnson's answer on cross examination, but the magistrate judge cut that line of questioning short.

After the hearing, the magistrate judge issued a Report and Recommendation ("R&R"). See United States v. Albury, No. 8:11-CR-410-T-23TBM, 2012 WL

6

1339481 (M.D. Fla. Jan. 19, 2012), report and recommendation rejected, No. 8:11-CR-410-T-23TBM, 2012 WL 1326921 (M.D. Fla. Apr. 17, 2012). In the R&R, the magistrate judge found that Officer Waker's initial entry into room 332 was unlawful, since the officers had not "observed, as set forth in the warrant application, that 'the [door] to 332 was wide open'" when they arrived. Thus, "[a]ny claim of plain view exposure to the suspected cocaine in room 332" by Detective Johnson was "tainted by [Officer Waker's] preceding illegal conduct." He also found the "independent source" rule inapplicable, because without the unlawful observation of cocaine inside room 332, Detective Johnson's affidavit made a showing of "arguable suspicion, but not probable cause," that contraband would be located within the room.

The district court adopted the findings of fact contained in the R&R. It disagreed, however, with the magistrate judge's legal conclusion that the independent source rule did not apply. See United States v. Albury, No. 8:11-CR-410-T-23TBM, 2012 WL 1326921 (M.D. Fla. Apr. 17, 2012). It found that even without the information unlawfully observed in room 332, the remaining, untainted evidence in Detective Johnson's affidavit supported a finding of probable cause. Thus, the district court denied Albury's motion to suppress, and the case proceeded to trial.

Albury was convicted of all counts except Count Four, possession of the Glock firearm by a convicted felon.  He moved for a new trial based on insufficient evidence, inconsistent verdicts, and improper jury instructions.  He also renewed an earlier motion for judgment of acquittal on similar grounds.  The district court denied all of Albury's motions.  See United States v. Albury, No. 8:11-CR-410-T-23TBM, 2012 WL 2912517 (M.D. Fla. July 16, 2012).  Albury timely appealed.

A panel of this Court previously found that although the district court denied Albury's motion to suppress based on its determination that the independent source rule applied, "it failed to reach the second question in the relevant analysis, namely, whether Detective Johnson would have sought the search warrant even if he had not seen the cocaine in Room 332."  United States v. Albury, No. 12-15183, Limited Remand Order, at 7-8 (11th Cir. Dec. 10, 2013).  Because the Court did not have the necessary facts to decide the suppression issue, it did not yet know what evidence to consider when addressing the remaining issues raised by Albury.  It retained jurisdiction over Albury's appeal, but remanded the case to the district court for the limited purpose of making a factual finding as to whether the warrant would have been sought if the police had not unlawfully entered room 332.

8

On limited remand, the district court conducted a hearing prior to making its findings of fact.[1]  At that hearing, the government presented essential testimony from Sergeant Monahan, Detective Johnson's acting supervisor the day the search warrant was sought.  Sergeant Monahan said that the decision of "whether to seek a search warrant" was a decision that "ultimately rest[ed] with" him.  He further stated that, even without the observation inside room 332, he would have ordered Detective Johnson to apply for a search warrant based on the discovery of cocaine and a firearm in room 342, Albury's recent transfer from room 342 to room 332, and Albury's prior felony conviction for trafficking in cocaine.  Based on that testimony, and a review of the entire record, the district court found that (1) the decision to seek a warrant was Sergeant Monahan's, not Detective Johnson's; and (2) Sergeant Monahan "would have sought the warrant to search room 332 even without the information obtained from room 332."

Albury's case has now returned to our Court.

---

[1] Albury objected that the district court should have made its findings of fact from the record, alone.  But the district court acted well within its authority when it held a hearing and allowed the presentation of testimony.  See United States v. Noriega, 676 F.3d 1252, 1263 (11th Cir. 2012) (remanding to the district court to determine whether a warrant would have been sought absent an unlawful protective sweep, stating that "[w]e leave it to the district court to determine whether to hear any additional testimony" on the matter).

9

## II.

## A.

First, Albury argues that the district court erred by denying his motion to suppress the evidence seized from room 332.  He claims that Detective Johnson's application for a warrant to search room 332 included observations made in violation of the Fourth Amendment, rendering the warrant invalid.  Therefore, all of the evidence seized pursuant to the invalid warrant should have been suppressed.[2]  See United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990) (noting that "evidence derived from" police misconduct generally must be excluded as "fruit of the poisonous tree") (quotation omitted).

The denial of a motion to suppress is a mixed question of law and fact.  We review the district court's findings of fact for clear error and the application of law to those facts de novo.  United States v. Beckles, 565 F.3d 832, 839 (11th Cir. 2009).  We construe all facts in favor of the prevailing party (here the government).  Id.  And we may affirm the district court's denial on any ground supported by the record.  United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010).

---

[2] Albury also argues the good faith exception embodied in United States v. Leon, 468 U.S. 897 (1984), does not apply because the magistrate judge found that Detective Johnson's affidavit contained statements made with "reckless indifference for the truth."  The government argues, in turn, that Albury abandoned his Fourth Amendment privacy interest in room 332 prior to the officers' arrival, rendering any warrantless entry into that room lawful.  Because we affirm the district court's finding that the warrant is valid under the independent source rule, we need not address those arguments.

When police use evidence gathered in violation of the Fourth Amendment to secure a warrant, we apply a two-part test to determine whether the evidence seized pursuant to the warrant is admissible. Noriega, 676 F.3d at 1260 (citing United States v. Chaves, 169 F.3d 687, 692-93 (11th Cir. 1999)). First, we excise from the affidavit any information gained from the "illegal initial entry and determine whether the remaining information" supports a finding of probable cause. Id.; cf. Franks v. Delaware, 438 U.S. 154, 168-72 (1978) (noting that warrants based on "falsified allegations to demonstrate probable cause" may be valid if sufficient, untainted evidence in the affidavit supports a finding of probable cause). If the remaining information supports a probable cause finding, we then determine whether the officers' "decision to seek the warrant was [not] prompted by what they had seen during the initial entry." Chaves, 169 F.3d at 693 (alteration in original) (quoting Murray v. United States, 487 U.S. 533, 542 (1988)). If the warrant would have been sought absent the illegal entry, the evidence seized pursuant to the warrant is admissible. Noriega, 676 F.3d at 1260-61.

Here, the district court found that "independent of any unlawful search of room 332," Detective Johnson's affidavit contained sufficient evidence to support a finding of probable cause. Probable cause exists when under the "totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

11

Although the determination that probable cause exists is a legal conclusion subject to plenary review, we "must give great deference to a lower court's determination that the totality of the circumstances supported a finding of probable cause." United States v. Steiger, 318 F.3d 1039, 1046 (11th Cir. 2003) (quotation omitted); see also United States v. Mathis, 767 F.3d 1264, 1275 n.3 (11th Cir. 2014) (per curiam) (stating that we "employ[] a commonsense approach in reviewing" search warrants), cert. denied, No. 14-7814, 2015 WL 732182 (U.S. Feb. 23, 2015). Where evidence shows that the defendant "is in possession of contraband that is of the type that [one] would normally [hide] at their residence," there is sufficient probable cause to support a search warrant. United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008).

As an initial matter, Albury does not challenge the evidence seized from room 342, the room he vacated prior to the officers' arrival. As a result, that evidence may serve as untainted evidence in Detective Johnson's affidavit. And to the extent the government's abandonment argument was rejected by the district court, it does not otherwise argue that Detective Johnson's observation inside of room 332 was lawful. See United States v. Folk, 754 F.3d 905, 911 (11th Cir. 2014) (noting that for the plain view doctrine to apply, the officer must view the object from a lawful vantage point), cert. denied, 135 S. Ct. 1006 (2015); United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994) ("[I]t is well-settled that a

12

person does not forfeit Fourth Amendment protection merely because he is residing in a hotel room."). We, therefore, assume for the sake of our analysis that all of the statements in Detective Johnson's affidavit derived from observations made inside room 332 were the product of an unlawful search and must be excised.

After excising the observations made from inside room 332, Detective Johnson's affidavit recounted that Albury paid for, and occupied, room 342 for six days prior to the officers' arrival. Because of a water leak in room 342, Albury moved directly from room 342 to room 332, just down the hall. Inside the vacated room, 342, the police found cocaine powder residue, two cookies of crack cocaine, and baggies with cocaine residue -- in addition to the baggies with residue that were removed by Blackwell and later retrieved from the hotel dumpster. Blackwell also told the police that he found a loaded Glock handgun inside room 342, which Albury promptly retrieved from the hotel safe. Finally, Albury had a prior felony conviction for trafficking in cocaine, making it unlawful for him to possess a firearm.

Ample, untainted evidence from room 342 strongly suggested that Albury, a convicted felon, was in possession of narcotics and a firearm. He was the only registered occupant of a room where the police found evidence of a large quantity of drugs and a firearm. He was then forced to relocate to room 332 the very day the police arrived. A court could easily draw the common sense conclusion that

13

Albury was still in possession of contraband when he moved to room 332, resulting in a strong probability that contraband would be found there. See Anton, 546 F.3d at 1358. We find no error in the district court's determination that, under the totality of the circumstances, the untainted portions of Detective Johnson's affidavit supported a finding of probable cause.

That leaves only the question of whether the warrant to search room 332 would have been sought if no unlawful observation had occurred. The Supreme Court has framed the relevant question as "whether the actual illegal search had any effect in producing the warrant." Murray, 487 U.S. at 542 n.3; see also Noriega, 676 F.3d at 1260 (stating that the rationale behind the independent source rule is to prevent the government from being in a "worse position than if the constitutional violation had not occurred").

The district court, on limited remand, made findings of fact on this point that we may review only for clear error. Specifically, it found that Sergeant Monahan, as the acting supervisor of the investigation, "was the person on the scene with the authority to decide, and the person who actually decided, to apply for the warrant to search room 332." It also found that Sergeant Monahan would have sought the warrant to search room 332 even without any of the information unlawfully derived from that room. In light of Sergeant Monahan's uncontradicted testimony at the hearing on limited remand, we cannot say that the district court's findings

14

are clearly erroneous.  The warrant would have been sought even if there had been no unlawful entry into room 332.  In short, the district court did not err in denying Albury's motion to suppress the evidence seized from room 332.

### B.

Albury argues next that the district court erred in denying his Rule 29 motion for judgment of acquittal based on insufficient evidence and inconsistent verdicts.  We are unpersuaded.

We review the denial of a motion for judgment of acquittal de novo.  United States v. Bowman, 302 F.3d 1228, 1237 (11th Cir. 2002) (per curiam).  When the sufficiency of the evidence is challenged, we "view[] the evidence in the light most favorable to the verdict," and draw "all reasonable inferences and credibility choices in the verdict's favor."  United States v. Godwin, 765 F.3d 1306, 1319 (11th Cir.), cert. denied, 135 S. Ct. 491 (2014).  "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence."  United States v. Doe, 661 F.3d 550, 560 (11th Cir. 2011) (quotation omitted).  We will not overturn a verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013).

Albury challenges the sufficiency of the evidence on all seven counts of his conviction, but he challenges the sufficiency of only one element -- his knowing possession of the firearm and narcotics.  To "sustain a conviction for possession of a controlled substance with intent to distribute, the government must show that a defendant knowingly possessed the controlled substance with the intent to distribute it."  United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005) (quotation omitted).  Under 18 U.S.C. § 924(c)(1)(A), the government must show that a defendant knowingly possessed a firearm in furtherance of any federal drug trafficking crime.  United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008).  And to prove a defendant violated 18 U.S.C. § 922(g)(1), "the government must show that (1) he or she knowingly possessed a firearm or ammunition, (2) he or she was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce."  United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam).  However, the government "need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence."  United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006).  Even when a residence is rented, a "person who owns or exercises dominion and control over a . . . residence in which contraband is concealed may be deemed to be in constructive possession of the

16

contraband." United States v. Morales, 868 F.2d 1562, 1573 (11th Cir. 1989) (quotation omitted).

The evidence is clear that Albury exercised control over both rooms in which contraband was discovered. Albury paid for both rooms with his personal credit card and in cash. Although some women's clothing was found in the rooms, hotel records listed no registered guests other than Albury, himself. Albury presented his identification to hotel staff when he picked up the key to room 332 the morning of the search. Blackwell saw Albury "going into" room 332 when Blackwell told him the Glock pistol found in room 342 was being held at the front desk. Albury personally reclaimed the Glock, once again presenting his identification. When the police ultimately searched room 332, they discovered Albury's Florida identification card, his credit card, and a prescription pill bottle bearing his name on the label. Indeed, the law enforcement officers found no identification for anyone other than Albury, and no hotel employee testified to seeing any other guest either with Albury, or in his rooms, at any point during his stay. Albury was the only person who dealt with the hotel when renting the rooms, and many of his personal effects were found there, strongly indicating that he not only resided in the rooms, but that he retained ultimate control over their use.

That the N-Benzylpiperazine pills and the Phoenix Arms pistol were found inside a purse inside the room does not foreclose a finding of constructive

17

possession.  See, e.g., United States v. Greer, 607 F.3d 559, 564-65 (8th Cir. 2010) (affirming a finding of constructive possession of a handgun by a male defendant even though the handgun was found in a woman's purse that was inside the bedroom closet of the defendant's rented home).  Drawing all inferences in the verdict's favor, a jury could reasonably have found beyond a reasonable doubt that Albury, himself, hid contraband in the purse before departing from the room.  We cannot say that no reasonable construction of the evidence would allow the jury to find that Albury exercised dominion and control over both rooms, knew of the contraband within them, and thereby constructively possessed that contraband.

Albury's alternative argument that his motion for judgment of acquittal should have been granted based on inconsistent jury verdicts is a nonstarter. Albury argues that the verdicts are inconsistent because the jury found him guilty of Count Eight, being a felon in possession of a Phoenix Arms firearm, and not guilty of Count Four, being a felon in possession of a Glock firearm -- yet it found him guilty of two counts of possessing a firearm in furtherance of a drug trafficking crime, Counts Three and Seven.  But there is no inconsistency.  Count Three of the indictment alleged the use of a firearm in furtherance of Counts One and Two -- trafficking in cocaine and trafficking in cocaine base, respectively. Whereas Count Seven of the indictment alleged the use of a firearm in furtherance of Counts Five and Six -- trafficking in at least 500 grams of cocaine and

18

trafficking in N-Benzylpiperazine, respectively.  The jury's finding that Albury possessed the Phoenix Arms firearm in Count Eight was sufficient to support the guilty verdicts on both Count Three and Count Seven.  The jury's finding of not guilty on Count Four, possession of the Glock firearm, was consistent with findings of guilt on all other counts.

But even assuming arguendo that the verdicts are inconsistent, we have held that a jury's "verdicts are 'insulate[d] from review' on the ground that they are inconsistent," as long as sufficient evidence supports each finding of guilt.  United States v. Mitchell, 146 F.3d 1338, 1344 (11th Cir. 1998) (alteration in original) (quoting United States v. Powell, 469 U.S. 57, 68-69 (1984)).  As we have discussed, ample evidence supported all seven counts of conviction the jury returned against Albury.  The district court did not err in denying Albury's motion for judgment of acquittal.

## C.

Finally, Albury argues that the district court erred by denying his motion for a new trial because insufficient evidence led to inconsistent verdicts, and because the district court improperly instructed the jury on intentional flight.  Again, we are unpersuaded.

We review the denial of a motion for a new trial for abuse of discretion. Hernandez, 433 F.3d at 1332.  Fed. R. Crim. P. 33 provides the district court with

19

discretion to grant a defendant a new trial "if the interest of justice so requires." The ultimate decision of whether to grant a new trial motion falls "within the sound discretion of the trial court." United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994) (quotation and alteration omitted). When considering a motion for a new trial, the district court "may weigh the evidence and consider the credibility of the witnesses." Hernandez, 433 F.3d at 1335 (quotation omitted). We will only overturn the denial of a motion for a new trial if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. at 1336 (quotation omitted).

We have already rejected Albury's arguments regarding insufficient evidence and inconsistent verdicts in the context of his motion for judgment of acquittal. It follows a fortiori that those arguments fail under the abuse of discretion standard we employ here.

Albury's suggestion that there was an insufficient factual foundation to support a jury instruction on flight likewise fails. Although we review "the legal correctness of a jury instruction de novo," United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000), where a defendant challenges the factual basis for a flight instruction, we review the district court only for abuse of discretion, United States v. Williams, 541 F.3d 1087, 1089 (11th Cir. 2008) (per curiam). A flight instruction is proper where a "reasonable jury could conclude, based on the

20

evidence presented, that [the defendant] fled from the police to avoid the charged crime." Williams, 541 F.3d at 1089. We will reverse a district court based on erroneous jury instruction only if we are left with a "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." United States v. Cochran, 683 F.3d 1314, 1319 (11th Cir. 2012) (quotation omitted).

Blackwell's testimony established that when the police arrived at the hotel, the door to Albury's room, room 332, was completely closed. Yet by the time the officers made their way to room 332, the door was unlatched, leaving a large quantity of cocaine and Albury's personal belongings unsecured in the room. Even though the room was left unlocked, Albury was never again seen at the hotel after the police arrived. The district court correctly noted that "some evidence suggests that Albury departed from the room and the motel promptly upon, and in response to, suspecting that the police were present."[3] Quite simply, there was a sufficient factual foundation to give a pattern instruction on intentional flight, which allows the jury to determine whether flight actually occurred. Because we do not have an ineradicable doubt as to whether the jury was properly guided in its deliberations,

---

[3] Albury argues that the magistrate judge made a finding of fact in the R&R that he did not flee. But the magistrate found only that Albury did not abandon his Fourth Amendment privacy interest in room 332, not that he did not flee from the police. In fact, the magistrate judge specifically noted that the door to room 332 was originally closed when the police arrived, that it was unlatched when Officer Waker knocked on the door, and "that [Albury] was not seen back at the room by the time of the search." He called these "circumstances meriting consideration," although they did not provide "sufficient proof to establish an abandonment."

we cannot say the district court abused its considerable discretion in denying

Albury's Rule 33 motion for a new trial.

Accordingly, we AFFIRM Albury's convictions.