[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11142
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cr-00051-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL PUGH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 28, 2019)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

A federal jury convicted Nathaniel Pugh of possession of a firearm by a

convicted felon, possession with intent to distribute methylenedioxy-n-

ethylcathinone (ethylone, popularly known as "Molly"), and possession of a

firearm in furtherance of a drug trafficking offense.  Pugh now appeals, arguing that the district court erred in denying his motion to suppress evidence and that the evidence at trial was insufficient to support his convictions.  We affirm.

I.

On November 4, 2015, around 4:45pm, police responded to a report of a shootout between a white car and a brown car in Savannah, Georgia.  They found shell casings and bullet fragments on the scene, some of which came from a 9mm pistol.  Just before 5:00pm, Nathaniel Pugh careened into the Memorial Hospital emergency-room parking lot in a white Ford Fusion, crashing into several cars on his way.  Two nurses ran to the car and found Pugh with a gunshot wound to his chest.  Pugh reached for the glovebox and mumbled something to one of the nurses—exactly what is disputed, but it had something to do with "glovebox" and "gun"—and the nurses brought Pugh into the emergency room for treatment.  The police arrived and secured the car.

Following hospital policy for gunshot victims, the nurses removed Pugh's clothing and belongings (including Pugh's wallet and cell phone) and gave them to the police.  When one of the officers hung Pugh's bloody clothes up to dry, he found a black nylon holster in Pugh's jeans.  Using this and other information, the police obtained a search warrant for the car.  When they executed the warrant, they found bullet holes, broken glass, blood droplets around the driver's seat, empty

2

9mm casings, and—in the glovebox—a Glock 9mm pistol with 20 bullets in a 31-round extended magazine. The gun had blood on it, and DNA testing indicated that Pugh was the source. In the car's center console, the police found drugs and drug paraphernalia—specifically, 22 grams of ethylone ("Molly"), one gram of cocaine, a scale, small plastic bags, and two cell phones. The police extracted the prior week's worth of data from Pugh's phone and found text messages discussing the sale of Molly, marijuana, cocaine, heroin, and Xanax, as well as photos of Pugh with the extended magazine and a clear plastic bag containing white powder.

Back at the hospital, two days after the shooting, a police detective interviewed Pugh. Pugh admitted to being at the site of the shootout in the white Ford Fusion, but he had a ready explanation: he was going to the store, he stopped to talk to "Jeff," Jeff tried to steal the car and shot Pugh, and Jeff then dropped the gun and drugs into the car through the driver's window. Pugh claimed that he stowed the gun in the glovebox "so [the police] would find it" and then drove to the hospital.

The government's superseding indictment charged Pugh with four counts: possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1); possession with intent to distribute methylenedioxy-n-ethylcathinone (ethylone or "Molly"), 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; and

possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C.
§ 924(c)(1)(A)(i).  Pugh pleaded not guilty and proceeded to a jury trial.  After one
day of testimony, the jury convicted Pugh on counts one, two, and four, but
acquitted him of count three (the cocaine charge).

## II.

Generally, a district court's denial of a suppression motion presents a mixed
question of law and fact in which we review legal conclusions de novo and factual
findings for clear error, construing the evidence in the light most favorable to the
prevailing party.  *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007).
Where the claim is not preserved, however, we will review it for plain error, which
requires the defendant to show that 1) an error occurred, 2) the error was plain, 3)
the error affected the defendant's substantial rights, and 4) the error seriously
affected the fairness of the judicial proceedings.  *United States v. Rodriguez*, 627
F.3d 1372, 1380 (11th Cir. 2010).

Similarly, we generally review sufficiency-of-the-evidence challenges de
novo, viewing the evidence in the light most favorable to the government and
drawing all reasonable inferences and credibility determinations in favor of the
verdict.  *United States v. Fischer*, 168 F.3d 1273, 1276 n.7 (11th Cir. 1999).  But
where the claim is not preserved, we will affirm "unless there is a manifest
miscarriage of justice"—that is, unless "the evidence on a key element of the

offense is so tenuous that a conviction would be shocking." *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006) (internal quotation marks and citation omitted).

## III.

### A. *Motion to Suppress*

We decline to review Pugh's suppression arguments because he waived them by failing to object to the magistrate's report recommending denial of his motion to suppress. Pugh originally filed a motion in the district court to suppress the evidence found in his clothes at the hospital and the evidence recovered from searching his car. A magistrate judge issued a report and recommendation concluding that Pugh's motion should be denied. That report informed the parties that they had fourteen days to file written objections with the district court and that "failure to timely file objections will result in the waiver of rights on appeal." Pugh did not object, and over a month-and-a-half later, the district court adopted the magistrate judge's report and recommendation.

Eleventh Circuit Rule 3-1 provides that a party's failure to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." Where a party so waives his

appellate rights, the Rule provides that we "may review on appeal for plain error if necessary in the interests of justice." On appeal, Pugh makes no plain-error argument. He does not even make any interests-of-justice argument that would trigger our discretion to conduct a plain-error analysis. We therefore decline to review his suppression arguments. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017).[1]

### B. Sufficiency of the Evidence

Pugh next argues that "the government has failed to prove that [he] had the requisite knowledge, that he possessed the gun or the ethyone [sic] or that he had the intent to distribute the ethylone to any other person."[2] The government argues that we should affirm absent a manifest miscarriage of justice because—although he moved for a directed verdict at the close of the government's evidence and filed a renewed motion after the verdict—Pugh failed to renew his motion at the close of

---

[1] Even if Pugh had made a convincing interests-of-justice argument, the outcome would be the same: we see no plain error in the denial of Pugh's suppression motion.

[2] To prove possession of a firearm by a convicted felon, the government had to show that 1) Pugh was a convicted felon, 2) Pugh knowingly possessed a firearm, and 3) the firearm was in or affected interstate commerce. *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003). To prove possession with intent to distribute drugs, the government had to show that Pugh 1) knowingly 2) possessed a controlled substance 3) with the intent to distribute it. *United States v. Farris*, 77 F.3d 391, 395 (11th Cir. 1996). And to prove possession of a firearm in furtherance of a drug trafficking offense, the government had to prove that Pugh 1) knowingly 2) possessed a firearm 3) in furtherance of any federal drug trafficking crime. *United States v. Albury*, 782 F.3d 1285, 1293 (11th Cir. 2015). On appeal, Pugh contests the sufficiency of the evidence only as to knowing possession of the gun and the ethylone and as to his intent to distribute the ethylone.

all evidence.  We need not address the standard-of-review question, however, because Pugh's sufficiency challenge fails under any standard.

To show knowing possession of the gun, the government "need not prove actual possession" but rather "need only show constructive possession through direct or circumstantial evidence."  *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006).  Constructive possession requires only that Pugh had "knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion," and it can be established "by finding ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband was concealed."  *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996) (internal quotation marks and citations omitted).  Further, we have specifically stated that a defendant's "presence in [a car], with ready access to the weapon later discovered in the glove compartment, was sufficient to prove that he possessed the [weapon], irrespective of the fact that the [car] belonged to a third person."  *United States v. Gonzalez*, 71 F.3d 819, 835 (11th Cir. 1996), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009); *see also United States v. Howard*, 742 F.3d 1334, 1341–42 (11th Cir. 2014) (same, and collecting cases).  Here, the evidence showed that and more: upon arrival at the hospital, Pugh

7

reached for the glove box and mumbled "gun" and "glove box." A reasonable jury could have concluded, as this jury did, that Pugh knowingly possessed the gun.

Similarly, to prove possession of drugs, constructive possession is enough and "can be established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." *United States v. Poole*, 878 F.2d 1389, 1391–92 (11th Cir. 1989). For the same reasons that the evidence sufficed to show that Pugh knowingly possessed the gun in the glove box, it sufficed to show that he knowingly possessed the drugs in the center console. The government also introduced text messages and photos from Pugh's cell phone that discussed drug sales and depicted drugs and drug paraphernalia.

Finally, the quantity of ethylone and the drug paraphernalia surrounding it sufficed to show Pugh's intent to distribute. *See Poole*, 878 F.2d at 1392 ("Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine."). The government presented evidence that 10 or more grams of ethylone is a distribution quantity, and along with the ethylone were a scale, small plastic bags, and two cell phones. Text messages from Pugh's phone discussed drug sales. This was more than enough for the jury to infer an intent to distribute.

8

One last note: Pugh suggests that the evidence is sufficient "only if this Court should conclude that the jury could reasonably find that the evidence excluded every reasonable hypothesis except that of guilt."  And he argues that the evidence here does not exclude the possibility that Pugh's assailant shot him and then dropped the gun and drugs into the car, leaving Pugh to arrive at the hospital with them.  But his major premise is wrong: "in deciding claims of insufficient evidence, courts no longer must assure themselves that the evidence excludes every reasonable hypothesis of innocence."  *United States v. Pantoja-Soto*, 739 F.2d 1520, 1527 (11th Cir. 1984).  Because the jury's interpretation of the evidence was reasonable, Pugh's innocent explanation does not compel reversal.

**AFFIRMED.**