[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12902
Non-Argument Calendar

_____

D.C. Docket No. 7:18-cr-00459-LSC-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS GABRIEL DE AZA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 10, 2020)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Carlos Gabriel De Aza appeals his convictions for possession of methamphetamine with the intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 1); possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c) (Count 2); and being a felon in possession of a firearm, *id.* § 922(g)(1) (Count 3).  He raises two issues on appeal.  First, he argues that the district court erred in denying his motion to suppress without a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because the police officer's affidavit in support of the search warrant included false statements from an unreliable source and exaggerated facts.  Second, he asserts that the government presented insufficient evidence to prove his possession of methamphetamine and firearms, as required to sustain his convictions.

Because the district court did not err in denying De Aza's motion to suppress without a *Franks* hearing and sufficient evidence supported the jury's verdict, we will affirm.

**I**

De Aza first argues that the district court should have held a *Franks* hearing because Officer Chris Webster's affidavit in support of the application for a warrant to search De Aza's home: (1) included information from Loren Allen that he saw drugs in De Aza's home, even though Allen was unreliable; and (2) stated

2

that alprazolam "pills" belonging to De Aza were found in Allen's car, even though only a single pill was recovered.

A district court's denial of an evidentiary hearing is generally reviewed for an abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). While we have not explicitly adopted a standard of review with respect to a *Franks* hearing, "abuse of discretion review is appropriate." *Id.*

To justify a *Franks* hearing, a defendant must "make[] a substantial preliminary showing" that the officer made intentionally false or recklessly misleading statements that were necessary to a probable-cause finding. *Franks*, 438 U.S. at 155–56. "Allegations of negligence or innocent mistake are insufficient," and a defendant may impeach only the affiant's statement, not the informant's statement. *United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001) (quoting *Franks*, 438 U.S. at 171–72). "When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false and misleading." *Barsoum*, 763 F.3d at 1328–29 (quotation omitted). The defendant must then show that, "absent those misrepresentations or omissions, probable cause would have been lacking." *Id.* at 1329. Only upon meeting this burden would the defendant be entitled to a hearing. *Novaton*, 271 F.3d at 986. To establish probable cause, the affidavit must "state facts sufficient to justify a

conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quotation omitted).

Although the government argues that De Aza failed to specifically object to the magistrate judge's report and recommendation, we conclude that we need not decide whether plain-error review applies because the district court did not err—plainly or otherwise—in denying the motion to suppress without a *Franks* hearing. With respect to the use of Allen's statement in the affidavit, De Aza provided no evidence showing that Officer Webster recounting Allen's statement that "an ounce" of methamphetamine was present in De Aza's home was intentionally or recklessly false. *See Franks*, 438 U.S. at 155–56. While De Aza attempts to cast doubt on Allen's reliability, it is Officer Webster's veracity that is relevant. *See Novaton*, 271 F.3d at 986. And Officer Webster did not recklessly rely on Allen's statement. The methamphetamine found in the car corroborated Allen's assertion that De Aza had methamphetamine in his home, and Allen's reliability was bolstered by the fact that he also provided inculpatory statements.

Even assuming Officer Webster acted wrongly, probable cause existed independent of the challenged statement. *See Franks*, 438 U.S. at 155–56; *Barsoum*, 763 F.3d at 1328–29. Specifically, the affidavit also noted: that methamphetamine was found in the car; that Allen said he had recently smoked

4

methamphetamine in the house with De Aza; and that other sources, surveillance, and investigative techniques indicated that evidence of De Aza's drug activity could be found in the house. *See Martin*, 297 F.3d at 1314.

Further, De Aza did not put forward any evidence that Officer Webster intentionally inflated the amount of alprazolam recovered from the car search. *See Franks*, 438 U.S. at 155–56. Aside from an assertion that the "pills" statement was an exaggeration, De Aza provided no argument as to why the erroneous reference was more than negligence or an innocent mistake. *See Novaton*, 271 F.3d at 986. Assuming that the mistake was intentional, however, De Aza also made no showing that the distinction between "pills" and "a pill," was necessary to the probable-cause finding, in light of the other information provided in the affidavit, including that methamphetamine was found in the car in addition to the single pill.

The district court therefore did not err in denying a *Franks* hearing, as De Aza failed to "make[] a substantial preliminary showing" that Officer Webster intentionally or recklessly made false statements on which the probable cause determination relied. *See Franks*, 438 U.S. at 155–56.

## II

Next, De Aza asserts that the district court erred in denying his motion for judgment of acquittal. Specifically, he argues that because multiple people lived at

his home, and no physical evidence connected the drugs or firearms to him, there was insufficient evidence to support that he possessed the drugs and firearms.

We review *de novo* the denial of a motion for judgment of acquittal based on sufficiency of the evidence. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). When determining sufficiency, we view the evidence "in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in [its] favor." *Id.* We will affirm "[i]f a reasonable jury could conclude that the evidence establishes [the defendant's] guilt beyond a reasonable doubt." *Id.* This standard does not require the evidence to be inconsistent with every reasonable hypothesis other than guilt; rather, the jury may choose between reasonable conclusions. *Id.* When circumstantial evidence is relied on, "reasonable inferences, not mere speculation, must support the conviction." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008). We have recognized that "[c]redibility determinations are the exclusive province of the jury." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (alteration in original) (quotation omitted). The government may rely on constructive possession through direct or circumstantial evidence, rather than actual possession. *United States v. Albury*, 782 F.3d 1285, 1294 (11th Cir. 2015). Accordingly, "a person who owns or exercises dominion and control over a residence in which contraband is

concealed may be deemed to be in constructive possession of the contraband." *Id.* (alteration adopted) (quotation omitted).

To prove Count 1, the government must have proven that De Aza (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute. 21 U.S.C. § 841(a)(1); *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989). To prove Count 2, the government must have shown that De Aza "(1) knowingly (2) possessed a firearm (3) in furtherance of any drug trafficking crime." *United States v. Williams*, 731 F.3d 1222, 1232 (11th Cir. 2013) (quotation omitted); *see also* 18 U.S.C. § 924(c). Lastly, to sustain a conviction for Count 3, the government must have proven three elements: (1) that De Aza was a convicted felon and knew he was a felon; (2) that De Aza was in knowing possession of a firearm; and (3) that the firearm was in or affected interstate commerce. 18 U.S.C. § 922(g)(1); *Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019); *see also United States v. Reed*, 941 F.3d 1018, 1020–22 (11th Cir. 2019) (applying *Rehaif* to the review of a pre-*Rehaif* conviction challenged for an insufficient indictment and evidence).

The government presented sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that De Aza possessed the methamphetamine and firearms. As to the methamphetamine required for Count 1, the jury heard from Allen that he smoked methamphetamine with De Aza in his house the day

7

prior to them being pulled over and that De Aza concealed the drugs' location from Allen. Although Allen admitted to smoking methamphetamine the day before he testified at trial, the jury had the sole authority to consider his credibility, *see Calderon*, 127 F.3d at 1325, and a conviction based on his testimony was not unreasonable in light of his testimony and the other evidence presented, *see Browne*, 505 F.3d at 1253. Moreover, the jury heard testimony that De Aza stated he was the sole occupant of his house and that law enforcement recovered more than 90 grams of methamphetamine from the house. Given this testimony, the jury was provided with sufficient circumstantial evidence from which it could have reasonably concluded that De Aza possessed the drugs without straying into speculation. *See Albury*, 782 F.3d at 1294; *Mendez*, 528 F.3d at 814.

Similarly, with regard to possession of the firearms required for Counts 2 and 3, the jury heard that the firearms found in De Aza's home were near the drugs and hidden throughout the home. Although the jury also heard evidence that De Aza's girlfriend lived with him and that one firearm was found in what appeared to be a purse, the jury could reasonably conclude that De Aza knew of the firearms and had constructive possession of them. *See Albury*, 782 F.3d at 1294; *Browne*, 505 F.3d at 1253. Accordingly, sufficient evidence supported the jury's verdict that De Aza had possession of the methamphetamine and firearms in order to sustain his convictions.

8

**AFFIRMED.**