[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10878
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cr-00360-AKK-JEO-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHICO MUNTEZ TATE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 28, 2021)


Before JILL PRYOR, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

First responders found Chico Tate passed out in his vehicle as he sat at a traffic light. He had fallen asleep in the driver's seat, while the car was still in gear. One responding police officer, Michael Stinson, described Tate as "drowsy" or a "little bit loopy." As Tate spoke with the medics, another officer, Brantley Carrero, looked inside the passenger side of the vehicle. He told Stinson that he "saw a blunt" in the center console. Stinson also walked up to the vehicle and saw the blunt. He asked Tate to step out of the car, placed him under arrest for possession of marijuana, patted him down, and found that he was carrying a gun.[1] Because Tate had multiple prior felony convictions, he was charged with and convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Now on appeal, he argues that the district court incorrectly denied his motion to suppress evidence of the gun because the officers lacked probable cause to arrest him for possession of marijuana.[2] We disagree.

I.

We review the district court's findings of fact supporting a denial of a motion to suppress for clear error and its application of the law de novo. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). To be clearly erroneous,

---

[1] Although Stinson told Tate that he was not under arrest at this point to keep him calm, the magistrate judge determined that this was the point at which Tate was under arrest.
[2] The suppression hearing was held before a magistrate judge, who later recommended that the district court deny the motion to suppress. The district court adopted the report and recommendation over Tate's objection.

2

the district court's factual findings must leave us "with a definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation omitted). We construe all facts and inferences in the light most favorable to the prevailing party below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

We review de novo the legal question of whether probable cause supported an arrest. *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). Nonetheless, we "give great deference to a lower court's determination that the totality of the circumstances supported a finding of probable cause." *United States v. Albury*, 782 F.3d 1285, 1292 (11th Cir. 2015) (quotation omitted).

## II.

According to the district court, the officers had probable cause to arrest Tate for possession of marijuana. But Tate argues that this conclusion was based on three clearly erroneous factual findings: (1) "that the officers observed distinguishing characteristics making the item in Mr. Tate's car more likely to contain marijuana"; (2) "that the officers could reliably identify a marijuana blunt by sight alone"; and (3) "that Mr. Tate made furtive movements" to try to hide the blunt in the center console. Tate also insists that the totality of the circumstances did not support probable cause for his arrest.

To begin, the district court did not clearly err in any of its factual findings. Take the first alleged error: that the court incorrectly found that "the appearance of the cigarillo in the car—including one flatter end 'that had been manipulated or re-rolled—indicated to [the officers] that it contained marijuana.'" Tate insists that neither officer "testified that they actually observed the cigarillo in the car appeared to have been manipulated or re-rolled," and that the court improperly "conflated" testimony regarding a blunt's general appearance with what the officers observed in Tate's car. But that is directly contradicted by the hearing transcript. During the suppression hearing, the magistrate judge asked Officer Carrero why he described the object in the console as a "blunt." Carrero answered, "Because it looked like a blunt." When the judge asked what that meant to him, Carrero responded, "Usually cigar paper rolled up. Paper that's been cut and rolled up and kind of flattened to smoke weed," adding that it doesn't "look like a manufactured cigarette or cigar."

Officer Stinson's testimony was consistent with Carrero's. He stated that he "saw a blunt" in Tate's car and described a blunt as a "cigar that you take the filling out of" and re-roll with marijuana "or spice or whatever you put inside of it." A blunt, he said, had a flattened end on one side and a circular end on the other. When the prosecutor asked whether that was the shape of the object that he saw in Tate's car, Stinson said, "Yes." Based on this testimony, the district court

could reasonably infer that the officers were describing the item that they saw in Tate's car.

Next, Tate faults the district court with crediting the officers' testimony that they were able to identify the item in Tate's car as a blunt. He claims (without citation or explanation) that Stinson was "several feet from the console" when he observed the blunt and thus had no opportunity to make an accurate observation. He further adds that Carrero's admission on cross-examination that he was "speculating" or "guessing" that the blunt contained marijuana undercut his testimony.

But probable cause "does not require convincing proof." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (quotation omitted). The officers did not know for certain that the cigarillo contained marijuana, but they had a reasonable basis to believe it did. Carrero had been with the Birmingham Police Department for nearly five years and testified that he came across blunts about two to three times a month. He claimed that he had never encountered a blunt that did not contain marijuana or "some sort of spice." Stinson, also, had been working for the Birmingham Police for more than three years and had encountered blunts "every day" or "[e]very other day." He had never encountered re-rolled cigars or cigarillos that didn't contain marijuana or spice.

5

Tate also suggests that Carrero's credibility was undermined when he misidentified a burnt tobacco cigarillo—an exhibit offered by the defendant—as a blunt during cross-examination. But we accept the credibility determinations of the factfinder unless the fact is "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quotation omitted). Carrero's misidentification was not a mistake that made it impossible for a reasonable factfinder to accept that he could generally identify a blunt, as the district court did.

Finally, Tate insists that the district court clearly erred in accepting Stinson's testimony that Tate was making "furtive movements toward the console as he was speaking to the medics." He claims that this testimony is inconsistent with Stinson's body-camera footage captured at the scene, which shows Tate's hands resting on his lap. But again, the district court's decision to credit Stinson's testimony was not "contrary to the laws of nature" or "inconsistent or improbable on its face." *Holt*, 777 F.3d at 1255 (quotation omitted). Although Tate does indeed have his hands on his lap during the body-camera footage he cites in his brief, there are many points where his hands are not visible in the video. The government also notes that Stinson may have been describing another part of the video where Tate did appear to be doing something with his hands. We are

6

therefore not convinced that the district court clearly erred in crediting Stinson's testimony.

Tate concludes by arguing that as a whole, the evidence presented at the suppression hearing did not establish that a "reasonable officer would have believed that the cigarillo in Mr. Tate's car contained marijuana." Probable cause to arrest exists if the totality of "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations adopted). It requires more than mere suspicion, but "does not require convincing proof." *Wood*, 323 F.3d at 878 (quotation omitted).

We agree with the district court that this standard was met here. Officers and paramedics found Tate passed out in the driver's seat of his car at an intersection. He was described as "drowsy" or a "little bit loopy." According to Stinson, Tate was making furtive movements near his center console, where Stinson and Carrero both claimed to see an item that looked like a blunt. We acknowledge that there were also other explanations for Tate's drowsiness and behavior, such as the fact that he claimed to be on pain killers. But construing all

facts and inferences in the government's favor, we are not persuaded that those explanations ultimately undercut the finding of probable cause.  We thus affirm.

**AFFIRMED.**