**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14069

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ALFONSO LEON WILSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00389-TPB-TGW-2

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and KIDD, Circuit Judges.

PER CURIAM:

Alfonso Leon Wilson appeals his convictions for drug conspiracy and unlawful monetary transactions. He argues that a new

trial, instead of judgment on a lesser-included offense, was warranted on the drug conspiracy charge after the court found the evidence insufficient to support the drug quantity charged in the indictment. He also argues that insufficient evidence supports his convictions for unlawful monetary transactions. No reversible error occurred. We affirm.

## I. BACKGROUND

A federal grand jury indicted Wilson on one count of conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl, 21 U.S.C. §§ 846, 841(b)(1)(A), one count of possession of 40 grams or more of fentanyl with intent to distribute, *id.* § 841(a)(1), (b)(1)(B); 18 U.S.C. § 2, and two counts of unlawful monetary transactions for the purchase of a Dodge Durango and a gold necklace with criminally derived property, 18 U.S.C. §§ 1957, 2. At trial, David Miller of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified that, in June 2022, he received information from a confidential source that an individual was purchasing fentanyl from a local dealer, Heriberto Pabon. Miller arranged for a controlled buy from Pabon. From this controlled buy, he was able to trace the source of Pabon's supply to Bobby Sylvester, another known dealer, and then to Christopher Thomas, another known dealer.

Miller suspected that Thomas's supply originated from another dealer, and on October 18, 2022, Miller arranged for a controlled buy of four and one-half ounces of fentanyl from Sylvester. He hoped that Sylvester would contact Thomas, who would then

"have to reach out to his source of supply [to] fulfill [the] order." Phone records and surveillance from that day captured a chain of communication from Sylvester to Thomas to Wilson. Authorities watched as Thomas bought cutting agents, met with Wilson at Wilson's mother's home, and then delivered fentanyl to Sylvester. After Sylvester obtained the fentanyl, authorities arrested him and recovered the fentanyl.

Miller testified that, between October 21, 2022, and November 14, 2022, authorities monitored Wilson's mother's home by pole camera, which recorded Wilson engaged in dozens of suspected hand-to-hand drug transactions, including one transaction in which he met with Thomas and, during the exchange, reached through the window of Thomas's car. Miller testified that Wilson did not have a job and that the footage showed him engaged in hand-to-hand transactions from the early afternoon until night. The investigation culminated on November 15, 2022, when a state trooper stopped Wilson for a traffic violation and authorities executed a search warrant of his mother's home. The trooper recovered bundles of $20 bills from Wilson's Durango vehicle. From his mother's home, authorities recovered a money counter, a backpack containing about $12,000, and a gold necklace that Wilson wore in the footage from the pole camera.

Thomas testified about the scope of his dealings with Wilson. He had known Wilson for 10 years and had bought drugs from him on multiple occasions. He bought marijuana from Wilson, but when he had an "emergency" and "nowhere else to get it from,"

he would also buy fentanyl from him. Thomas confirmed that, on October 18, 2022, he bought 28 grams of fentanyl from Wilson to fulfill Sylvester's order and that he started buying fentanyl from Wilson in June 2022. Thomas bought 14 grams of fentanyl from Wilson once or twice a week and paid $750 in cash per transaction.

The government introduced financial evidence in support of the charges for unlawful monetary transactions. A forensic auditor with the Bureau testified that Wilson made cash purchases of $59,860 for the Durango and $10,500 for the gold necklace in August 2022. None of the cash used to pay for the Durango or the necklace came from Wilson's bank accounts. Instead, the investigation into Wilson's finances, including his Cash App account, revealed payments to him for "drugs" and "da weed."

After the government rested, Wilson moved for a judgment of acquittal. He argued that the amount of fentanyl proved at trial fell short of the charged amounts and that the government failed to prove that the Durango and necklace were bought with drug proceeds. The district court denied the motion. Wilson rested and did not put on a defense.

The jury returned a verdict of guilty on the drug-conspiracy charge and the charges for unlawful monetary transactions. It acquitted him of the drug-possession charge. As to the drug-conspiracy charge, the jury found Wilson guilty of conspiracy to distribute drugs and, separately, that the substance was 400 grams or more of fentanyl.

After trial, Wilson filed a renewed joint motion for a judgment of acquittal and motion for a new trial. In addition to renewing his arguments as to the government's failure to prove the drug quantities as charged and the source of the funds used to buy the Durango and the necklace, he sought a new trial in the interest of justice. He argued that the jury's acquittal on the drug-possession charge meant that it had rejected Thomas's testimony about the conspiracy. The district court granted the motion in part because the evidence was insufficient to support the drug quantity charged in the indictment, but otherwise denied the motion. It sentenced Wilson to 180 months of imprisonment followed by 3 years of supervised release.

## II. STANDARDS OF REVIEW

Two standards govern our review. "We review both a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal *de novo*." *United States v. Laines*, 69 F.4th 1221, 1229 (11th Cir. 2023) (citation and internal quotation marks omitted). "We view the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in the government's favor, and then determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted). "We review . . . the denial of a

motion for a new trial for an abuse of discretion." *Id.* (alteration adopted) (citation and internal quotation marks omitted).

### III. DISCUSSION

We divide our discussion into two parts. First, we explain that a new trial is not warranted on the drug-conspiracy charge. Second, we explain that the record contains sufficient evidence to support Wilson's convictions for unlawful monetary transactions.

*A. Wilson is Not Entitled to a New Trial on the Drug-Conspiracy Charge.*

Wilson argues that, once the district court ruled that the evidence was insufficient to support the drug quantity charged in the conspiracy count of the indictment, it should have granted a new trial. In support, he urges us to consider the test in *Allison v. United States*, 409 F.2d 455 (D.C. Cir. 1969), to determine whether the district court erred when it entered judgment on a lesser-included offense. He argues that the jury's acquittal on the drug-possession charge meant that it rejected Thomas's testimony and makes his conspiracy conviction a miscarriage of justice. He also argues that the high drug weight in the indictment limited his trial strategy and prevented him from fully impeaching Thomas for fear of eliciting testimony that would prove the drug quantity. The decision to convict him of the lesser charge and not grant a new trial, he argues, punished him for a strategic choice. We disagree.

A district court may grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "When considering a motion for a new trial, the district court may weigh the

evidence and consider the credibility of the witnesses." *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015) (citation and internal quotation marks omitted). We will not disturb the denial of a motion for a new trial unless the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (alteration adopted) (citation and internal quotation marks omitted).

Wilson is not entitled to a new trial. Thomas's testimony was not the sole basis for the drug-conspiracy conviction. The government presented pole camera footage that showed Wilson engaged in hand-to-hand transactions and evidence of the large amounts of cash it recovered from Wilson's property. Although Wilson suggests that the jury's acquittal on the drug-possession charge means that the jury rejected Thomas's testimony, the jury was entitled to disregard parts of Thomas's testimony and believe others. *See United States v. Duldulao*, 87 F.4th 1239, 1265 (11th Cir. 2023). Moreover, even if we were to consider *Allison*, it would only apply if we "determine on appeal that there is insufficient evidence to support the verdict," which is not the case here. *See United States v. Cortez-Nieto*, 43 F.4th 1034, 1049 (10th Cir. 2022).

Wilson's argument that he was forced to make a strategic decision at trial that he otherwise might not have made had he known that the district court would convict him of a lesser-included offense also does not warrant a new trial. All defendants charged with a drug conspiracy must weigh the risks of challenging their culpability against challenging the weight of the drugs

involved. Because the record contains sufficient evidence to sustain the drug-conspiracy conviction and does not preponderate heavily against the verdict, the district court did not abuse its discretion in denying Wilson a new trial.

### B. Sufficient Evidence Supports Wilson's Convictions for Unlawful Monetary Transactions.

Wilson argues that the evidence was insufficient to support his convictions for unlawful monetary transactions because the government failed to prove beyond a reasonable doubt that the money used to buy the Durango and the necklace came from drug proceeds. He explains that the only evidence of money he received before the purchases of the Durango and the necklace came from Thomas's testimony, which established that the payments to Wilson totaled at most $18,000--$2,000 short of the combined $20,000 threshold needed for a conviction on both charges. We disagree.

To convict Wilson of unlawful monetary transactions, the government had to prove that he "knowingly engage[d] or attempt[ed] to engage in a monetary transaction in criminally derived property of a value greater than $10,000," and that the money was "derived from specified unlawful activity." *See* 18 U.S.C. § 1957(a). Criminally derived property is "any property constituting, or derived from, proceeds obtained from a criminal offense," and specified unlawful activity includes "dealing in a controlled substance." *See id*. §§ 1957(f), 1956, 1961(1).

Sufficient evidence supports Wilson's convictions for unlawful monetary transactions. The jury could have reasonably found

that Wilson bought the Durango and gold necklace with proceeds derived from his drug dealings. *See id.* §§ 1957(a). Contrary to Wilson's argument, the jury was not limited solely to Thomas's testimony about the number of times he bought fentanyl and the amount he paid Wilson for that fentanyl beginning in June 2022. Thomas also testified to his long-standing relationship with Wilson, and admitted that, even before June 2022, when he began buying fentanyl from Wilson, he had bought marijuana from him. Wilson's financial records, which showed payments for "drugs" and "da weed," corroborated this testimony.

The physical evidence seized late in the investigation also supports Wilson's convictions for unlawful monetary transactions. Although the $12,000 in cash found in Wilson's backpack, the bundles of $20 bills in his Durango, and the bill counter in his mother's home were seized in November 2022—after the purchases of the Durango and necklace in August 2022—these items are probative of Wilson's cumulative drug dealings. A reasonable jury could infer from this evidence that Wilson had a pattern of drug distribution and cash management, and it could reasonably connect Wilson's drug dealings to the purchases he made months earlier. Viewing the evidence in the light most favorable to the government, the district court did not err in denying Wilson's motion for a judgment of acquittal.

## IV. CONCLUSION

We **AFFIRM** Wilson's convictions.